## No. 11,548.

## PAGE v. ELWELL.

Decided February 21, 1927.   Rehearing denied March 14, 1927.

Proceeding involving settlement of the estate of a deceased person.

*Judgment Affirmed.*

1. DESCENT AND DISTRIBUTION—*Widow—Heir.* Under existing Colorado statutes, a widow takes by descent and is an heir of her deceased husband.

2.    *Advancements.* The purpose of the law of advancement was to secure equality among the children of an intestate where the latter had not indicated a contrary intent; but it was not the purpose to produce equality between the widow and children.

3.    *Widow—Children.* In Colorado where a man dies intestate leaving a widow and children, the widow inherits one half of the property and the children the other half.

4. WILLS—*Widow—Children.* A man may disinherit his children, but under the Colorado statutes he cannot, without his wife's consent in writing, will away from her more than one-half of his property.

5. HOMESTEADS—*Widow—Child.* Where a man dies seized of a homestead leaving a widow and child, the widow is entitled to the homestead. The child is entitled to it only when there is no widow.

6. EXECUTORS AND ADMINISTRATORS—*Widow's Allowance—Children.* The widow of a deceased person is entitled to a widow's allowance; but a child is entitled to a corresponding allowance only when there is no widow.

7. DESCENT AND DISTRIBUTION—*Advancements—Widow.* A widow is included within the words "other heirs," as they are used in C. L. section 5155, and has the right to have charged to a child who has received an advancement, the amount so advanced.

8.    *Advancements—"Charged."* The word "charged" as used in C. L. section 5360, concerning advancements, does not signify a debit entry in an account book, but is used in the sense of imposing a duty upon.

9.    *Statutes—Construction.* Section 5360 of the Compiled Laws concerning charge of advancements to children of deceased persons, does not require the charge to be made in writing; it may be oral.

10. WORDS AND PHRASES—*"Hotchpot."* Hotchpot has been defined as bringing into the estate of an intestate an estimate of the value of advancements made by the intestate to his or her children, in order that the whole may be divided in accordance with the statute of descents.

11. DESCENT AND DISTRIBUTION—*Advancements.* In the absence of a contrary intent, the presumption arises that the gift of a substantial amount to a child by his father is intended as an advancement to be taken into account upon the final distribution of the father's estate, if he dies intestate, but this presumption is rebuttable. The intent is controlling.

12.    *Advancement or Gift—Intent.* In ascertaining whether money given to a child by his father was intended to be a gift or advancement, all the surrounding facts and circumstances must be taken into consideration.

13.    *Advanceemnts—Children.* In general, expenditures in the discharge of ordinary parental duties will not be considered advancements to a child in the settlement of the parent's estate, and under some circumstances, the rule applies to an adult child as well as to minors.

14. STATUTES—*Construction.* The principle that an exception in a statute amounts to an affirmation of its provisions to all other cases not excepted, and excludes all other exceptions, is not always applicable.

15.    *Construction.* All sections of a statute should be given effect if it is possible to do so without doing violence to its terms.

16.    *Construction—Punctuation.* In the construction of statutes a slight change in punctuation is permissible to accomplish the legislative intent.

17. DESCENT AND DISTRIBUTION—*Advancements—Intent.* The intention of a parent in making remittances to a child, as to whether the same are to be considered gifts or advancements, is to be determined as of the very time each remittance is made.

18.    *Advancement—Defined.* An advancement is a perfect and irrevocable gift, although made with the intention that it represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor intestate.

19.     *Advancements.*  In an action to have charged to a child as
advancements, money given her by her father during his lifetime,
record reviewed, and one amount of $1,000 used in business, held
to be an advancement, and all other remittances absolute gifts.

*Error to the District Court of the City and County of
Denver, Hon. Henley A. Calvert, Judge.*

Messrs. PERSHING, NYE, TALLMADGE & BOSWORTH, Mr.
LEWIS A. DICK, for plaintiff in error.

Messrs. DOUD & WALKER, for defendant in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

The plaintiff in error is the widow of Frederick C.
Page, and the defendant in error is his daughter. In this
opinion the former will be referred to as the plaintiff
or the widow, and the latter as the defendant or the
daughter.

The estate of Frederick C. Page was being admin-
istered in the county court. The plaintiff applied to have
the court charge to the defendant as advancements cer-
tain moneys received by the defendant from her father
during his lifetime, and to have such sums deducted from
the defendant's share of the estate upon distribution
thereof. From the judgment of the county court an ap-
peal was taken to the district court, where judgment was
entered, charging to the defendant as an advancement,
and requiring her to account for, $1,000 of the moneys
so received, and adjudging that the remaining sums re-
ceived by her and aggregating $12,195 should not be
charged to her as advancements and need not be ac-
counted for by her. The latter part of the judgment the
plaintiff attacks as erroneous, and the defendant con-

tends that the court erred in the former part of the judgment.

The main questions presented to the court for decision are these: (1) Is the plaintiff entitled to raise the question of advancements to the defendant? If she is not, the judgment, so far as it charges the defendant with $1,000 as an advancement, must be reversed, and the judgment in other respects affirmed. If the plaintiff is entitled to raise the question of advancements, the court must then consider this group of questions: (2) Does section 5360, C. L. require advancements to be charged? If so, in what manner must they be charged? Were the advancements so charged? If that section does require advancements to be charged in a particular manner, then if the charges were not made substantially in the manner required, the judgment, so far as it charges the defendant with $1,000 as an advancement, must be reversed, and the judgment in other respects affirmed. If that section does not require advancements to be charged, or if it does not require the charge to be made in a particular manner, the court must proceed to a consideration of the next question, which is, (3) Were the moneys, or any thereof, received by the defendant, advancements within the meaning of the law? If they were not, the judgment, so far as it charges the defendant with $1,000 as an advancement, must be reversed, and the judgment in other respects affirmed. Point 3 would naturally precede point 2, but we adopt the present order for convenience and to avoid repetition.

1. The plaintiff asserts, and the defendant denies, that a widow can raise the question of advancements to a child.

Section 5155, C. L., is as follows: ''Where any of the children of the intestate shall have received in his lifetime any real or personal estate, by way of advancement, and the *other heirs* desire it to be charged to him, the county judge shall cite the parties to appear before him,

shall hear the proof upon the subject, and shall determine the amount of such advancement or advancements to be thus charged.''

Under section 5151, C. L., the widow takes by descent. The widow, therefore, is an heir. *Anderson v. Groesbeck,* 26 Colo. 3, 55 Pac. 1086; *Binkley v. Switzer,* 75 Colo. 1, 223 Pac. 757.

In our statute for the determination of heirship, section 9 (C. L. § 5175) provides: ''The words 'heir' and 'heirs' as used in this act shall be construed to include all persons entitled under the laws of descent and distribution of this state to share in the estate of said decedent.''

But counsel for the defendant contends that the word ''heirs'' in section 5155, is used in a restricted sense and applies to children only; that that section originally was incorporated in the act of 1861; that at that time the widow was entitled to dower and was in no sense an heir; that the word ''heirs'' in that section was used as a synonym for children; that originally, and ever since where not changed by statute, the law of advancement was a device to secure equality among the children of an intestate; that the widow had no concern with advancements, was not required to account for moneys given to her by her husband, and was not entitled to call upon any child to account for advancements made to him; that if a child was required to so account, i. e. to bring his advancement into hotchpot, it was only on application by the other child or children, who alone would benefit by such proceeding. It is contended that as this section was brought forward and re-enacted in the several revisions and compilations, the word ''heirs'' in section 5155 of the Compiled Laws of 1921 should be given the meaning it had when it was originally used in the act of 1861, notwithstanding the fact that in 1868 the widow was by statute made an heir, and has so remained ever since. Our attention is called to *In re Ahlers,* 141 App.

Div. 893, 127 N. Y. S. 61, in which the court said that, in ascertaining the intent of statutes, "the history of the various enactments is to be considered. In their grouping together in a consolidation, it is to be deemed that the legislature has intended to preserve the preceding enactments in force to the fullest extent in which they are consistent mutually." But at page 63 the court noted the fact that the statute being considered was "not a new enactment," but "a compilation or consolidation" of existing statutes. In 1903 (S. L. '03 c. 181) our legislature passed an act entitled, "An act in relation to probate matters, including estates of minors, deceased persons and persons mentally incompetent, and the administration thereof, and to repeal certain acts in relation thereto." It was not a compilation or consolidation of existing statutes. While it incorporated some provisions that were in previous acts, it rejected others, and it contained provisions wholly new. It was a new enactment, comprehensive in its scope covering the various matters expressed in the title. Section 1 occurs in C. L. as section 5151. The effect of that section is to make the widow an heir. Section 4 is section 5155 of C. L. It allows "the other heirs" to take proceedings to charge advancements to children receiving the same. Our attention is called to *Hindry v. Holt*, 24 Colo. 464, 51 Pac. 1002, 39 L. R. A. 351, 65 Am. St. Rep. 235, where we held that the words "heir or heirs," as used in subdivision "second" of section 1508 of Mills' Ann. Stat. (now sec. 6302, C. L.), concerning actions for death by negligence, does not include all those entitled to share in the estate of an intestate, but were intended to mean "child or children," and limit the right of action to lineal descendants. This result was arrived at in order to carry out the plain purpose of the act, which was to compensate those who suffer pecuniary loss by reason of the death. We there called attention to the fact that a contrary decision would permit collateral kindred, however remote, who would derive no

pecuniary benefit from the continuance of the life of the deceased, to maintain the action, "a result wholly inconsistent with the plain purport and object of the statute." In the present case, if there is a compelling reason, based upon the history or the language of the enactments, why the words "other heirs" should be given a restricted meaning, we should so limit their meaning; otherwise the words should be so construed as to include the widow. Counsel argue that the object of the law of advancements is to produce equality; that as the widow is not subjected to the burden of that law in that she is not required to account for moneys that she has received, it cannot be assumed that the legislature intended that she should have its benefit by permitting her to require an accounting from children who have received advancements. It is true that it was the purpose of the law to secure equality among the children of an intestate where the intestate had not indicated a contrary intent. But it was not, and is not, the legislative purpose to produce equality between the widow and the children. In Colorado, for example, where a man dies leaving a widow and five children, the widow inherits one-half of the property, whereas each child inherits only one-tenth. A man may disinherit his children, but he cannot, without his wife's consent in writing, will away from her more than one-half of his property. When a man dies seized of a homestead and leaving a widow and a child, the widow is entitled to the homestead; the child is entitled to it only where there is no widow. The widow is entitled to what is known as a widow's allowance; whereas a child is entitled to a corresponding allowance only in the event that there is no widow. Since the old days when a widow was not an heir, but was entitled only to dower, there has been a marked change in the status of women. They have been made heirs of their deceased husbands; they have been given the right to vote; they have become familiar with and are intrusted with busi-

ness affairs as never before; they enjoy greatly enlarged educational opportunities. This was true when, in 1903, the legislature passed a new and comprehensive act, containing the provisions to which we have called attention. It is not unreasonable, indeed it is altogether reasonable, to suppose that it was the legislative intent to confer upon the widow, as one of the heirs, the right to have charged to a child who has received an advancement the amount so advanced, and to have the child's distributive share reduced by that amount, thereby increasing the widow's share. Whether it would be well to provide that a widow, also, should be charged with advancements made to her, and required to account therefor, as seems to be the case in Kansas (*Klein v. Blackshere,* 113 Kan. 539, 215 Pac. 315), is a question for the legislature, not for the courts, to decide.

We conclude that the plaintiff had the right to institute the present proceeding.

2. The defendant contends that there is no necessity for inquiring whether the moneys received by the defendant were advancements, because even if they were such Page did not charge them on his account book or in any other writing, as advancements, and that section 5360, C. L., requires this to be done. The section reads: "When any heir of an intestate has received money, goods, chattels or real estate, if the amount so received shall be charged to such heir by said intestate, the same shall be taken into computation in making distribution of the estate, upon being brought into hotchpot; *provided,* that an heir who has received from the intestate more than his share shall in no case be required to refund."

The defendant argues that the entries in Page's cash book were not such "charges," and the plaintiff contends that they were; a matter that we will revert to later. The word "charge" has many meanings. Webster's Dictionary gives as many as sixteen. It cannot be said that the word is used to signify a debit entry in an account

book. The section does not require the charge to be made in writing; it may be either oral or in writing. Obviously the word "charged" was used in the sense of "imposing a duty upon." Thus, when an intestate has given money to a child as an advancement, the testator thereby charges the heir with the amount advanced, that is, he thereby imposes upon such heir the duty of bringing into hotchpot the amount so advanced, if he wishes to share in a distribution of the estate. Hotchpot has been defined as "the bringing into the estate of an intestate an estimate of the value of advancements made by the intestate to his or her children, in order that the whole may be divided in accordance with the statute of descents." 18 C. J. 927. This construction brings section 5360 into harmony with section 5155, relating to advancements. The remaining question, therefore, is whether the moneys received by the defendant were sent to her under such circumstances as to indicate an intent on Page's part to charge her therewith, as advancements, that is, to impose upon her the duty of accounting therefor upon distribution of his estate.

3. Were the moneys, or any thereof, received by the defendant from her father advancements within the meaning of the law? Advancement has been thus defined: "In its strict technical sense an advancement is a perfect and irrevocable gift, not required by law, made by a parent, during his lifetime, to his child, with the intention on the part of the donor that such gift shall represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor intestate." 1 R. C. L. p. 653.

In the absence of any evidence indicating a contrary intent, it is presumed that a father intended to treat his children all alike; hence, where all that is known is that money was given, a presumption arises that a gift of a substantial amount to a child was intended as an advancement, to be taken into account upon the final dis-

tribution of the father's estate, if he died intestate. This presumption is rebuttable. If from a consideration of all the circumstances surrounding the gift, it appears that such was not his intent, the gift is held to be not an advancement. The intent is controlling. In ascertaining what the intestate intended, it is important to consider the value of the gift as compared with the total value of the donor's property; the number of children; the purpose of the gift, whether to set the child up in business or as a marriage portion, or to discharge ordinary parental duties to a child; whether the child is a minor or an adult; whether the child, if an adult, is able to support himself, or is unable by reason of disease or accident to do so, and whether the money was given in a lump sum or in small sums from time to time for the maintenance of the child. Thus, where it is made to appear that the child is a minor and that the money was given for the maintenance or education of the child, this overcomes the presumption that it was intended as an advancement, and raises the contrary presumption, which, in its turn, unless otherwise provided by statute, may be rebutted by proof that it was in fact intended as an advancement.

"In general, expenditures incurred in the discharge of the ordinary parental duties will not be considered advancements to the child." 18 C. J. 922. Thus in *Crain v. Mallone,* 130 Ky. 125, 113 S. W. 67, 22 L. R. A. (N. S.) 1165, it was held that money which a parent expends in the care of an adult child of unsound mind cannot be charged against him as an advancement in the settlement of the parent's estate. The following is from the opinion: "The duty and obligation of a parent to care for his offspring does not necessarily terminate when the child arrives at age or becomes an adult; nor is it limited to infants and children of tender years. An adult child may from accident or disease be as helpless and incapable of making his support as an infant, and we see no difference in principle between the duty imposed upon the parent to support the infant and the obligation to care for the

adult, who is equally, if not more, dependent upon the parent.  *  *  *  Nor was the maintaining of J. C. Mallone by his mother with any view to a portion or settlement in life within the meaning of section 1407 of the statute, supra.  It was done in the discharge of a filial duty that a mother owed to her helpless child.  The advancements made were only those necessary to sustain him from day to day, and can in no sense be considered as an advancement made with a view to a portion or settlement in life.''

The annotator, at page 1165 of 22 L. R. A. (N. S.), comments thus:  ''The conclusion reached in the above case that a parent of means owes the duty to an incompetent adult child to support him even after he becomes of age would seem to be in accordance with all principles of right and justice.''

But the plaintiff contends that section 5156, C. L., precludes an inquiry concerning the intent of the intestate. That section reads:  ''The maintenance, education or supply of money to a child under the age of majority, without any view to apportionment or settlement in life, shall not be deemed an advancement under section 4 (§ 5155, C. L.) of this chapter.''

The argument is that an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted, and excludes all other exceptions; hence the remittances to the defendant, an adult, *must* be regarded as advancements.  This principle is not always applicable.  For example, plaintiff's argument is that as to adults the section, in effect, reads: The maintenance, education or supply of money to a child *not* under the age of majority, *without* any view to apportionment or settlement in life, *shall* be deemed an advancement; yet they would hesitate to follow the argument another step, thus:  The maintenance, education or supply of money to an adult child *with* a view to apportionment or settlement for life, shall *not* be deemed an advancement.

If the section in question means that the maintenance or education of a minor child, without any view to apportionment or settlement for life, shall not be deemed an advancement, and that a supply of money to a minor child, without any such view, shall not be deemed an advancement, it would merely state the law as it is without the section—the law applicable alike to infant and adult —and therefore would accomplish nothing. The section, however, should be given some effect, if it is possible to do so without doing violence to its terms. By a slight change in punctuation the section can be made effective, so as to accomplish what we believe to be the legislative intent. This is always permissible. Lewis' Sutherland on Statutory Construction (2d Ed.) Sec. 361 (232). The legislature evidently intended to provide that the maintenance or education of a minor, regardless of the intent, shall not be deemed an advancement, and that a supply of money to a minor for other purposes, shall not be considered an advancement, if the money was supplied without any view to apportionment or settlement in life. This alters the law with reference to money furnished the infant for maintenance or education so as to substitute for the rebuttable presumption that it was not intended as an advancement the legislative command that it shall not be deemed an advancement, leaving the law with reference to the giving of money to the infant for other purposes much the same as it would be without the section. Taking the comma from between the word "majority" and the word "without," and placing it between the word "education" and the word "or" would help to express what we believe to be the legislative intent: "The maintenance, education, or supply of money to a child under the age of majority without any view to apportionment or settlement in life, shall not be deemed an advancement," etc. Even thus, the arrangement of the words is not free from criticism. If the section does not have the meaning we have suggested, then apparently it was inserted in the act merely out of abundance of caution so as to make it cer-

tain that section 5155 should not be given a construction not intended. Section 5156 follows, almost word for word, the section considered by the Indiana Supreme Court in *Woolery v. Woolery,* 29 Ind. 249. The court held that what constituted an advancement remained a question of intention, saying: "It will be observed that section 12 does not define what shall be an advancement, while the 14th section only declares what shall not be deemed such."

Whichever of these views is correct, the result is the same, so far as this case is concerned. We hold that whether the gifts to the defendant were advancements or not is a question of intent. That being true, the trial court did not err in admitting the testimony of the defendant's mother, Hettie J. Page, concerning the defendant's health and earnings and other matters that may have influenced Page in sending money to the defendant, and that shed some light upon his intention in doing so. All the surrounding circumstances should be considered in order to ascertain whether or not, in sending the various sums of money to his daughter (the defendant), Page intended that she should account for them and have them deducted from her share of his estate in the event that he died intestate; in other words, whether he intended them as advancements, to be brought into hotchpot upon final distribution of his estate. There is no conflict in the evidence. The defendant was born in 1885. Her father and mother were divorced in 1895. After the divorce, she went to live with her mother. In 1906 she married. She and her husband lived in Kelso, Washington. Two children were born of the marriage, one in 1907, the other in 1911. Her husband died in 1915 of cancer of the brain, after an illness of about fifteen months, during which time he underwent three surgical operations. The defendant's health was poor after the birth of her first child, her illness lasting for about two and one-half years, when an operation was performed. During the period of her illness she was dependent upon

her father for financial help; she was unable to hold a
position and work all day. Since her husband's death
she has been obliged to work in order to support her two
children. For about six years she was librarian, and the
most she ever received as salary was forty dollars per
month. Page was a man of considerable means. He left
property in Colorado worth about $130,000, and a farm
in Nebraska worth approximately $25,000. He had cash
balances at all times running from $1,700 to $7,000, and
had money out in loans. He was fond of his daughter.
In 1908 he married the plaintiff. That year and the next
year the defendant's health being poor, Page sent her
money at various times. In 1908, he sent $50 and in 1909,
$50. Thereafter he continued to send her money. In
1910 he sent several sums aggregating $1,060; in 1911,
several sums aggregating $165; in 1912, several sums ag-
gregating $150; in 1913, several sums aggregating $225.
In 1914, while his son-in-law was ill, Page sent the de-
fendant $1,000 to put into her husband's business, and
after the death of her husband in 1915, $500 to help pay
the expenses of her husband's last illness and the ex-
penses of the funeral. Thereafter she requested her
father to send her $50 per month to be used by her for
the support of herself and her children, and later she
asked that the amount be increased to $75 per month for
the same purpose. The father complied with these re-
quests. Upon several occasions she requested and re-
ceived extra remittances for the purpose of meeting her
necessary expenses. The money thus received by the de-
fendant prior to 1914 amounted to $1,660; that received
after January 1, 1914, amounted to $11,535, making the
total amount received $13,195.

Prior to 1914 Page kept no account books. His checks
and check stubs gave no indication of the purpose for
which the remittances to the defendant were made, except
one for $15 dated December 20, 1911, marked "Order of
Edith, Christmas," and one for $25, dated December 18,

1913, which has the notation, "Order of Edith, Xmas." After January 1, 1914, he kept a book in which he entered his cash receipts and expenditures, and noted his monthly cash balance. From time to time in this book, scattered among many other entries, he noted sums sent to the defendant. Most of them read "To Edith." Others are worded differently, but none state the purpose for which the money was sent, except one, dated June 28, 1924, which reads "To Edith for operation on Frederick, $50." November 29, 1924 Page died, leaving as his sole heirs his widow (the plaintiff) and one child (the defendant), a daughter by a former marriage. The parties agree that under the Nebraska law the daughter is entitled to three-fourths and the widow one-fourth of the Nebraska farm.

It must be borne in mind that the intent involved in the inquiry is the intent of Page at the very time he sent each remittance; that although the remittances aggregate $13,195, they extended over a period of nearly seventeen years; that with a very few exceptions they were in small amounts (small considering the father's means); that the defendant was in need, whereas the father was wealthy; that the defendant was his only child; that he loved her; that part of the time she was ill; that the only other person who would share in a distribution of his estate was the plaintiff; that with the exception of the $1,000 to be put into her husband's business and the $25 for Christmas, the moneys were sent for her support and maintenance and to pay the expenses incurred by reason of the illness and death of her husband; and that there is no evidence that the remittances were made out of the corpus of Page's estate, and from the fact that his cash balance at all times ran from $1,700 to $7,000, we may infer that they were not. It is altogether probable that the plaintiff's support during the same period of time equaled, if it did not exceed, the support of the defendant. The plaintiff contends that Page's checks, check stubs and cash book show that the moneys sent

to the defendant were charged to her, and from this circumstance he draws the conclusion that the moneys must be presumed to be advancements. An accountant testified that, if the items "were carried into a general ledger, said items of money would be debited to the account of Edith, and in the absence of any offset, the aggregate of the debit entries from such account would stand charged to Edith for her accounting." Plaintiff admits (Brief, p. 16) "that the intestate was not an experienced bookkeeper." This is obvious from an examination of the book. Thus, a number of entries are like this: "Himself 25." Is this charged to him, to be accounted for by him? If so, to whom must he account? "Chicago Grand Opera Co. 9." Is this charged to that company, to be accounted for by it? "To himself for Edith $50." Is this charged to himself, to be accounted for by him, and if so to whom? Or is it charged to Edith, to be accounted for by her? "To Cora for Dan $25." "To Edith and city taxes $85." "To Tetrazzina concert 3.30." Is this charged to Tetrazzini, to be accounted for by her? The book is not a ledger; it contains accounts with no one. At no place is there a grouping together of the entries of moneys sent to the defendant. The book is merely a record of cash received and expended and of the cash on hand at the end of each month. It makes no attempt to distribute the items to different accounts. So far as the defendant is concerned, there are only two remittances where any hint is given of their purpose; the two Christmas presents of $15 and $25. It is only by the stipulation of facts that we are informed that $1,000 sent in 1914, was to be put into the business of the defendant's husband, and that $500, sent in 1915, was to help pay the expenses of her husband's last illness and funeral expenses. Even if Page had kept a ledger account with Edith and charged her with the moneys sent to her, unless he charged them as loans, or gifts, or advancements, the charges would indicate scarcely more than that he sent money to her, or at most that she was indebted to

him in the total of the amounts charged. A debt is not an advancement, nor is an advancement a debt. On the contrary, an advancement is "a perfect and irrevocable gift," though it is made with the intention that it "shall represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor intestate." 1 R. C. L. p. 653. This is not a suit brought by an administrator to recover on an indebtedness. The book and the accountant's testimony are not helpful to the plaintiff's case.

From a consideration of all the facts and circumstances in evidence, we are satisfied that, with the exception of the $1,000 sent for investment in the business of the defendant's husband, Page intended his remittances to be absolute gifts, and not advancements to be deducted from the defendant's distributable share of his estate in the event that he should die intestate. We are also satisfied that the $1,000 was intended as an advancement. Money advanced to establish a child in business will be presumed to be an advancement. Though the presumption is rebuttable, we believe that the facts and circumstances in evidence do not overcome the presumption.

As the judgment of the trial court is in harmony with the views herein expressed, the judgment is affirmed.

Mr. Justice Campbell concurs in the opinion in all respects, except that he would be disposed to enlarge the amount of advancements.